**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL CASE NO. 21-65-DLB-CJS**

**McHUTCHISON, INC.**                                                                 **PLAINTIFF**

**v.**                                      **MEMORANDUM OPINION AND ORDER**


**EASON HORTICULTURAL RESOURCES, INC., et al.**                 **DEFENDANTS**

**\* \* \* \* \* \* \* \* \* \***

In March and April of 2021, twenty-five percent of the sales staff, the Vice President of the Nursery Division, and other customer service professionals of McHutchison, Inc. ("McHutchison") left their employment to join Eason Horticultural Resources, Inc. ("EHR"). In doing so, McHutchison alleges that the departed employees unlawfully took proprietary information to assist EHR in expanding its market footprint in the nursery wholesale business. Shortly thereafter, McHutchison moved for a Temporary Restraining Order and Preliminary Injunction to prevent EHR from taking orders from customers who were previously served by McHutchison. (Doc. # 10). Defendants EHR, James Eason, Michael Pezzillo, Jeremy Montgomery, Donald Blocker, John Campbell, Paige Pearce Moats, Steve Stier, James Etzel, and Lucretia Perkins filed a Response in opposition to Plaintiff's Motion. (Doc. # 30). Thereafter, Plaintiff McHutchison filed a Reply. (Doc. # 38). On June 16, 2021, the Court held a Hearing on the Motion in Covington. (Doc. # 49). At the conclusion of that hearing, the Court **denied** McHutchison's Motion. (*Id.*). In this Order, the Court gives its reasons for doing so.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff McHutchison is a wholesale supplier of plants that previously employed Defendants Michael Pezzillo, Jeremy Montgomery, Donald Blocker, John Campbell, Paige Pearce Moats, Steve Stier, James Etzel, and Lucretia Perkins in different capacities in McHutchison's Nursery Division.  (Doc. # 1 ¶¶ 1-3, 12-19).  In March and April of 2021, Defendants Pezzillo, Montgomery, Blocker, Campbell, Moats, Stier, Etzel, and Perkins left their employment with McHutchison to join Defendant EHR, a company similarly involved in horticultural sales and distribution.[1]  (*Id.* ¶¶ 10, 38-42).   The remaining Defendant, James Eason, is the President of EHR.  (*Id.* ¶ 11).

In its Complaint, Plaintiff alleges eleven claims: (I) breach of fiduciary duty and duty of loyalty, (II) tortious interference with contracts, (III) tortious interference with prospective business relations and business advantage, (IV) violation of Kentucky Uniform Trade Secrets Act (KRS §§ 365.880, et seq.), (V) violation of the Defense of Trade Secrets Act (18 U.S.C. §§ 1836, et seq.), (VI) conversion, (VII) civil conspiracy, (VIII) defamation, (IX) fraud, (X) unjust enrichment, and (XI) promissory estoppel.  (*Id.* ¶¶ 113-185).   According to McHutchison, each of these causes of action relate to "the unlawful conduct and fallout from a group of McHutchison employees—most notably the Vice President of its Nursery Division [Pezzillo] and multiple longtime Sales Representatives—recently leaving *en masse* to go to [EHR]."  (*Id.* ¶ 1).  McHutchison alleges that while the at-will employees were free to leave their employment with McHutchison to work for a competitor, they unlawfully held customer orders so that they

---

[1]    When referring to the past McHutchison employees, the Court will use the term "departed employees."  Defendants Montgomery, Blocker, Campbell, Moats, Stier, and Etzel, will also be referred to as "Defendant sales representatives" throughout this opinion.

could book these orders when they began working at EHR, took critical trade secret, confidential and proprietary information, and made false and defamatory statements about McHutchison to customers and vendors. (*Id.* ¶ 5). There is no dispute as to whether the departed employees were able to leave McHutchison for employment elsewhere as none of these Defendants were bound by a covenant not to compete. As a result of this exodus of employees, and the actions alleged, McHutchison filed a Motion for a Temporary Restraining Order and Preliminary Injunction asking for the following relief:

> (1) a **temporary order** that precludes Defendants from: (a) contacting and/or soliciting, in any manner, and/or taking orders from any McHutchison customer that was not also a nursery customer of [EHR]'s prior to March 12, 2021; (b) copying, distributing, or in any way utilizing McHutchison's confidential, trade secret, and proprietary information; and (c) making any defamatory statements about McHutchison, until McHutchison's preliminary injunction request is heard and resolved; and (2) a **preliminary order** that: (a) precludes Defendants from contacting and/or soliciting in any manner and/or taking orders from any McHutchison customer that was not also an [EHR] nursery customer prior to March 12, 2021—until January 1, 2022; (b) precludes Defendants from copying, distributing, retaining, or utilizing in any way McHutchison's confidential, trade secret, and proprietary information; (c) requires Defendants to return, and, under agreed parameters, delete such information; (d) precludes Defendants from making defamatory statements about McHutchison; and (e) precludes Defendant Pezzillo from making any misrepresentation to any McHutchison employee about job security or that McHutchison may be sold.

(Doc. # 10 at 1) (emphasis added). As part of Defendants' response pleadings, they assert that they have already complied with several of Plaintiff's requests. (Doc. # 30 at 9). Defendants state that they have returned or destroyed all materials they developed while employed by McHutchison and will refrain from making defamatory statements about McHutchison.[2] (*Id.*). Therefore, the Court will focus its consideration on whether it

---

[2]     At the hearing, Defendants reiterated this statement, but Plaintiff stated that the materials are still located on some of the Defendants electronic devices. Defendants explained to the Court

is appropriate to enjoin Defendants from "contacting and/or soliciting, in any manner, and/or taking orders" from McHutchison customers who were not EHR customers prior to March 12, 2021.  (Doc. # 10 at 1).

## II.    ANALYSIS

### A.    Standard of Review

To determine whether a party should be granted a temporary restraining order or a preliminary injunction,[3] a court weighs the following factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."  *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020) (quoting *Am. Civ. Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015)).  The preceding factors are not prerequisites that must be met; instead, they are to be balanced by the court in order to determine whether a preliminary injunction is the appropriate remedy.  *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).  However, "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'"  *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).  Although the party moving for a preliminary injunction

---

that they did not want to remove this information due to the pending litigation.  At the conclusion of the hearing, the Court ordered that the parties may submit a proposed agreed protective order regarding the documents and electronic devices at issue.  (Doc. # 49 at 2).

[3]    The same factors are utilized by a court to determine the propriety of granting a temporary restraining order and a motion for a preliminary injunction.  *N.E. Ohio Coal. For Homeless & Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  For the sake of efficiency, the Court will refer to the Motion as one for a preliminary injunction in this opinion.

"is not required to prove his case in full at a preliminary injunction hearing, it remains the case that preliminary injunctions are an extraordinary and drastic remedy." *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019) (internal citations and quotations omitted). The moving party bears the burden of establishing the necessity of the preliminary injunction, "including showing irreparable harm and likelihood of success." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir 2012).

## B.    Likelihood of Success on the Merits

If Plaintiff is unlikely to succeed on the merits of its case, the first factor in the Court's analysis weighs against granting the motion for a preliminary injunction. Plaintiff is required to show "a strong likelihood of success on the merits," *Hargett*, 978 F.3d at 385 (quoting *Am. Civ. Liberties Union*, 796 F.3d at 642), instead of "a mere possibility of success," *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quoting *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)). As discussed above, Plaintiff has alleged eleven causes of action in its Complaint. (*See* Doc. # 1 ¶¶ 113-185). Each of these counts will be discussed in turn.

### 1.    *Breach of Fiduciary Duty and Duty of Loyalty*

Plaintiff McHutchison first alleges a breach of fiduciary duty and duty of loyalty claim against Pezzillo and Defendant sales representatives. (Doc. # 1 ¶¶ 113-120). To prove breach of a fiduciary duty under Kentucky law, a plaintiff must show: "(1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation." *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013). It is typically "presumed that an officer or director of a corporation [such as

Pezzillo] is a fiduciary," but "a mere salesperson" may only owe fiduciary duties to his employer "if the specific circumstances of his or her employment so require." *Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12-cv-429, 2015 WL 520960, at *7 (W.D. Ky. Feb. 9, 2015) (internal quotations omitted). Specifically, "Kentucky courts are willing to find a fiduciary relationship between an employer and employee when the employee has a 'position of trust, the freedom of decision, and access to confidential corporate information.'" *Id.* (quoting *Aero Drapery of Ky., Inc. v. Engdahl*, 507 S.W.2d 166, 168 (Ky. 1974)). However, "such access [to confidential information] will not, alone, put an employee in a position of trust." *Id.*

Further, "[s]ettled law permits an employee to prepare to compete with his employer before leaving the company, provided the employee does not act unfairly or otherwise injure his principal before the departure." *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 546-47 (Ky. Ct. App. 2016) (citing *Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 667 (6th Cir 2010)). Even if Pezzillo and the Defendant sales representatives were fiduciaries of McHutchison, "a fiduciary can compete after the fiduciary relationship has ended." *Id.* at 547. The end of an employment relationship often signifies the end of any underlying fiduciary relationship. *See* Restatement (Second) of Agency, § 393, cmt. e (2021) ("After the termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed.").

Here, it seems unlikely that Defendant sales representatives had access to confidential corporate information that would indicate that they were fiduciaries of McHutchison. McHutchison claims that the customer lists, customer order histories,

rebooking forms and reports, and detailed information on McHutchison's network of growers/vendors, transportation companies, and other relationships relevant to its sale and distribution chain are proprietary and confidential information that should be classified as trade secrets. However, at this point in the litigation, the record supports a finding that this information was not confidential.[4] *See Insight*, 514 S.W.3d at 555 ("[i]nformation cannot constitute a trade secret and, thus, is not confidential if the subject matter is of public knowledge or general knowledge in the industry or if the matter consists of ideas which are well known or easily ascertainable.") (internal quotations omitted).

For example, Defendants provide a number of declarations from past McHutchison customers who had access to rebooking forms and reports, as well as their order history, (*see* Docs. # 30-2, 30-3, 30-4, 30-5, and 30-6), McHutchison's publicly accessible website lists its vendors as well as the product catalog each vendor provides, (MCHUTCHISON, https://www.mchutchison.com/vendors (last visited June 16, 2021)), and Defendants contend that the customer lists were developed by the individual employees, instead of by McHutchison, (Doc. # 30 at 5). As such, Plaintiff is unable to show substantial evidence that this information is proprietary and confidential. Further, even if this information is confidential, access to confidential information alone is not enough to establish that an employee is a fiduciary. *Cmty. Ties of Am.*, 2015 WL 520960, at *7 (quoting *Engdahl*, 507 S.W.2d at 168). Therefore, Plaintiff has failed to meet its burden of showing a strong likelihood of success on the merits because it has failed to show that Defendant sales representatives were fiduciaries of McHutchison.

---

[4] As mentioned below, *infra* II.B.11, there is also a factual dispute between Plaintiff and Defendants as to what level of confidentiality is required of McHutchison employees, depending on which employee handbook applies to the Defendant sales representatives. (*See* Doc. # 38-2 at 73, 116).

Defendant Pezzillo, as the former Vice President of the Nursery Division at McHutchison, was likely engaged in a fiduciary relationship with McHutchison. *See Cmty. Ties of Am.*, 2015 WL 520960, at *7. McHutchison specifically alleges that he had access to confidential company financial data, salary and sales credit information, and strategic planning materials. (Doc. # 1 ¶ 37). Even assuming that this information is confidential and Pezzillo is found to be a fiduciary, McHutchison did not allege in its Complaint that any of Pezzillo's allegedly tortious actions occurred *during* his employment with McHutchison. Instead, Plaintiff alleged that Pezzillo encouraged the other Defendants who were previously employed by McHutchison to resign or depart between April 16 and April 30, 2021, almost a month after his resignation on March 26, 2021. (Doc. # 1 at ¶¶ 38, 40). Any fiduciary duty Pezzillo owed McHutchison was terminated when he left his employment with McHutchison, *see* Restatement (Second) of Agency, § 393, cmt. e (2021). Therefore, if the Court were to only consider Plaintiff's Complaint, Plaintiff has not alleged facts adequate to show a strong likelihood of success on its breach of fiduciary duty claim.

However, at the hearing, Plaintiff clarified that Pezzillo did engage in discussions with EHR prior to leaving his employment at McHutchison. Namely, Plaintiff showed an agreement between Pezzillo and EHR dated November 25, 2020, (*see* Doc. # 45-1 at 1-3), and an email where Pezzillo suggests stock ownership for himself and "high performing sales representatives," (*see id.* at 4-6). Plaintiff characterizes the stock ownership email as Pezzillo suggesting he receive stock options from EHR in exchange for bringing over high performing sales representatives from McHutchison. However, this alone is not enough to establish breach of a fiduciary duty. Even before terminating his

relationship with McHutchison, Pezzillo "is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein." Restatement (Second) of Agency, § 393, cmt. e (2021). At-will employees are free to pursue new employment opportunities without breaching their duty to their current employer. *See Miles Farm Supply*, 595 F.3d at 667. Because the agreement and email, without further contextual information, only evidence a potential employment opportunity, McHutchison failed to show how Pezzillo's actions constituted a breach of his fiduciary duty. Because of this failure, Plaintiff has not alleged facts adequate to show a strong likelihood of success on this specific claim.

### 2.   *Tortious Interference with Contracts*

Next, Plaintiff alleges that all Defendants tortiously interfered with Plaintiff's contracts with its customers and vendors. (Doc. # 1 ¶¶ 121-127). To succeed on a claim for tortious interference with a contract, a plaintiff must show: (1) existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intention to cause a breach of the contract, (4) defendant's actions caused a breach of the contract, (5) plaintiff suffered damages as a result of the breach, and (6) defendant's conduct was not privileged or justified. *Seeger Enters., Inc. v. Town & Country Bank and Tr. Co.*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017). "Liability attaches to '[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract.'" *Outfront Media, LLC v. LeMaster*, 399 F.Supp.3d 671, 692 (E.D. Ky. 2019) (quoting Restatement (Second) of Torts § 766 cmt. i (1977)). Therefore, the "critical element" is showing that a defendant caused a breach of contract, and if a defendant did not cause a third party to

breach a valid and enforceable contract, then the tortious interference claim will fail.  *See*

*Ventas, Inc. v. Health Care Prop. Invs., Inc.*, 635 F.Supp.2d 612, 619 (W.D. Ky. 2009).

McHutchison alleges that all Defendants to this action interfered with contracts McHutchison had with its customers and vendors, and that the Defendant sales representatives specifically contacted customers and vendors to induce them to cancel existing orders with McHutchison so that the orders could be placed with Defendant EHR instead.  (Doc. # 10 at 10).  However, in the Complaint McHutchison only alleges that vendors and customers "attempted improper cancellations."  (Doc. # 1 ¶ 87).  The Complaint also alleges that Plaintiff "contracted customers and advised that cancellation so close to shipment dates was not permitted under their contracts," but "the customers who sought to cancel by and large reversed course and kept their orders at McHutchison." (*Id.* ¶¶ 98, 100).

Here, the most relevant element to Plaintiff's underlying cause of action is whether Defendants' actions actually caused customers or vendors to breach their contracts with Plaintiff.  Plaintiff has provided no evidence that by cancelling their orders, customers or vendors breached their contracts with McHutchison.  Defendants argue that in the horticulture industry, customers are generally able to cancel existing orders at any time before delivery of the product.  (Docs. # 30 at 2 and 30-1).  While Plaintiff states that cancellation terms are incorporated in contracts with customers, (Doc. # 39 ¶ 44), it is unclear from the face of Plaintiff's Complaint, (Doc. # 1), as well as the pending Motion, (Doc. # 10), that any customers or vendors of McHutchison did in fact breach their contracts with McHutchison or whether they were legally able to do so.  Because Plaintiff has not clearly alleged, let alone demonstrated, that customers or vendors breached their

contracts, Plaintiff has not met the burden of establishing a strong likelihood of success on the merits for its tortious interference with contracts claim.

### 3. Tortious Interference with Prospective Business Relations and Business Advantage

Third, Plaintiff argues that all Defendants tortiously interfered with Plaintiff's prospective business relations and business advantage. (Doc. # 1 ¶¶ 128-136). To make out this claim, Plaintiff must prove: "(1) the existence of a valid business relationship or expectancy; (2) that [Defendant] was aware of this relationship or expectancy; (3) that [Defendant] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6 (Ky. Ct. App. 2012). To prevail on this cause of action, "a party seeking recovery must show malice or some significantly wrongful conduct." *Nat'l Collegiate Athletic Ass'n by and through Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988). These types of cases "turn[] almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it . . ." *Id.*

Plaintiff alleges that Defendants' conduct of misappropriation of McHutchison's property, failure to place orders for McHutchison so that they could place those same orders at EHR, redirecting customers to EHR, and using false and defamatory statements about McHutchison was "not an example of mere lawful competition conducted in good faith." (Doc. # 10 at 11). If Plaintiff's allegations regarding Defendants' conduct while still working at McHutchison are substantiated during this case, Plaintiff may be able to prevail on this cause of action, at least with respect to some of the Defendants. However, showing "a mere possibility of success" is not the "strong" showing contemplated by Kentucky courts when evaluating movant's request for a preliminary injunction. *See*

*Certified Restoration Dry Cleaning* 511 F.3d at 543 (quoting *Six Clinics*, 119 F.3d at 402.

Because of this, Plaintiff has again failed to show a strong likelihood of success on the

merits.

### 4. Violation of Kentucky Uniform Trade Secrets Act

Fourth, Plaintiff alleges that all Defendants violated the Kentucky Uniform Trade

Secrets Act ("KUTSA"), Ky. Rev. Stat. §§ 365.880, et seq., by misappropriating

McHutchison property. (Doc. # 1 ¶¶ 137-144). KRS § 365.880(4) defines "trade secret"

as "information . . . that: (a) derives independent economic value, actual or potential, from

not being generally known to, and not being readily ascertainable by proper means by,

other persons who can obtain economic value from its disclosure or use, and (b) is the

subject of efforts that are reasonable under the circumstances to maintain its secrecy."

An individual misappropriates a trade secret if the person disclosed or used a trade secret

of another without express or implied consent by a person who "at the time of disclosure

or use, knew or had a reason to know that [the] knowledge of the trade secret was . . .

derived from or through a person who owed a duty to the person seeking relief to maintain

its secrecy or limit its use." KRS § 365.880(2)(b)(2)(c)[5].

The vast majority of the argument from the motion hearing addressed whether

customer lists, customer order histories, rebooking forms and reports, and detailed

information on McHutchison's network of growers/vendors should be considered trade

---

[5]      It should also be noted that pursuing a cause of action under KUTSA may prevent Plaintiff
from asserting other common law claims laid out in the Complaint, "to the extent that they are
based upon the misappropriation of trade secrets" unless "a further factual basis beyond
misappropriation of trade secrets" is provided. *Grief, Inc. v. MacDonald*, No. 3:06-cv-312, 2007
WL 528540, at *1 (W.D. Ky. Feb. 14, 2007); KRS § 365.892 ("[e]xcept as provided in subsection
(2) of this section, KRS 365.880 to 365.900 replaces conflicting tort, restitutionary, and other law
of this state providing civil remedies for misappropriation of a trade secret.")

secrets. Plaintiff alleges that this information is confidential and proprietary, and falls under KUTSA's definition of trade secrets. (Doc. # 10 at 13-14). Defendant argues that this information is accessible through proper means and therefore is not entitled to trade secret protection. (Doc. # 30 at 13). Each item will be discussed in turn.

Based upon the current record, Plaintiff did not make reasonable efforts to maintain the confidential nature of the rebooking reports or past customer orders. To the contrary, Plaintiff's actions made "the information readily ascertainable by many people directly and indirectly through proper means." *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 795 (W.D. Ky. 2001). To highlight this reality, Defendants have presented proof from both the former President of McHutchison and a number of McHutchison's past customers that the rebooking reports and customer order histories are readily available to any customer upon request. (*See* Docs. # 30-1, 30-2, 30-3, 30-4, 30-5, and 30-6). While Plaintiff stated during the hearing that it was not its regular practice to provide rebooking reports to customers, Plaintiff did agree that salespeople would often bring a copy of the rebooking report when meeting with customers. Based on that statement, it seems likely that the customers' ability to access this information through "proper means," waives any trade secret protection Plaintiff may have had. *Auto Channel*, 144 F. Supp. 2d at 795 (plaintiffs waived trade secret protection when they provided defendants with promotional materials without signifying that they were confidential or trade secrets).

Similarly, as to McHutchison's network of vendors, this information is available on McHutchison's publicly accessible website, thereby rebutting Plaintiff's argument that this information is a protected trade secret. MCHUTCHISON, mchutchison.com/vendors (last

visited June 22, 2021). The website specifically lists the vendors represented by McHutchison and includes catalogs for those vendors, which depict what specific products the vendors offer. *Id.*

Nor has Plaintiff demonstrated a strong likelihood that the customer lists constitute trade secrets. Customer lists may be considered a trade secret if they are "discoverable only through extraordinary efforts and . . . through many years' expenditure of time and money." *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 714 (6th Cir. 2005). There is a distinction between lists discoverable only through extraordinary efforts and "lists of customers whose identities as purchasers of a given type of product may be obtained through such legitimate channels as telephone books, the internet, or by calling local businesses." *Id.* The later is not considered a trade secret. *Id.*

Plaintiff contends that the customer lists at issue are trade secrets because they were created over an extended period of time and contained details that were not easily accessible. To bolster this argument, at the hearing, Plaintiff presented a spreadsheet of Defendant Etzel's customers, which included not only a customer's name and address, but also direct contact information for a representative of the customer and an applicable credit limit. (*See* Docs. # 42 at 14-15 and 45-1 at 9-18). Defendants clarified that Etzel created this list from information compiled from his phone, which is supported by Etzel's deposition. (Doc. # 42 at 14-15). In addition, McHutchison's former President, Michael Tizio, provided a declaration stating that "customer lists are not confidential or trade secrets," as they are "easily accessible through the vendors, the Internet, business directories and customers." (Doc. # 30-1 ¶ 8). At this time, Plaintiff has not presented

evidence refuting Defendants' evidence that the customer lists were readily available. Accordingly, McHutchison has failed to show a strong likelihood that the customer lists would be considered a trade secret.

Up to this point, McHutchison has not provided strong evidence that the customer lists, customer order histories, rebooking forms and reports, and detailed information on McHutchison's network of growers/vendors should be considered trade secrets. Defendants have provided evidence disputing Plaintiff's contention that the information was subject to reasonable efforts to maintain its secrecy. Because of this, Plaintiff has failed to show a strong likelihood of success on this claim at this stage in the litigation.

### 5. Violation of the Defense of Trade Secrets Act

Fifth, Plaintiff alleges that all Defendants violated the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, et seq., by misappropriating McHutchison property. (Doc. # 1 ¶¶ 145-149). The DTSA, 18 U.S.C. § 1836(b)(1) establishes a civil cause of action for the misappropriation of a trade secret, so long as the trade secret is related to a product or service used in, or intended for use in, interstate commerce. A trade secret is defined as information that the owner has taken reasonable measures to keep secret and which derives economic value from not being readily ascertainable through proper means. 18 U.S.C. § 1839(3)(A)-(B).

For the same reasons discussed above, *supra* II.B.4, it is unlikely that McHutchison will prevail on the merits of its DTSA claim. To succeed on its DTSA claim, McHutchison must prove that actions were taken to protect the secrecy of the relevant information. At this stage in the litigation, Plaintiff has failed to do so, while Defendants have provided evidence that this information was readily accessible to them, and therefore not a trade

secret.

### 6. Conversion

Sixth, Plaintiff alleges a count of conversion against all Defendants for wrongfully exercising control over McHutchison's property. (Doc. # 1 ¶¶ 150-157). To make out a conversion claim, Plaintiff must show: "(1) the plaintiff had legal title to the converted property; (2) the plaintiff had the right to possess the property at the time of the conversion; (3) the defendant exercised dominion over the plaintiff's property in a way that deprived the plaintiff of its use and enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff demanded return of the property and the defendant refused; (6) the defendant's act was the legal cause of plaintiff's loss of the property; and (7) the plaintiff suffered damages from the loss of the property." *Ford v. Baerg*, 532 S.W.3d 638, 641 n.2 (Ky. 2017).

McHutchison contends that all Defendants converted McHutchison Property,[6] and "exercised dominion over it in a manner that denies McHutchison's rights to exclusive use of it." (Doc. # 10 at 16). However, McHutchison has failed to present any proof that Defendants used the property in a way that deprived McHutchison of its use and enjoyment. *See J & J Sports Prods., Inc. v. Jaschkowitz*, No. 5:14-cv-440, 2016 WL 2727015, at * (E.D. Ky. May 6, 2016) (granting a motion for summary judgment when plaintiffs failed to present proof that defendant exercised dominion over a broadcast of a boxing match in a manner that denied plaintiff of its rights to use the broadcast). Similarly,

---

[6] While not explicitly stated in Plaintiff's Motion for Preliminary Injunction, the Court assumes that McHutchison is referring to the same property discussed in the two misappropriation of trade secrets claims. Namely, customer lists, customer order history, proprietary rebooking forms and reports, and detailed information on McHutchison's network of growers/vendors, transportation companies, and other relationships relevant to its sale and distribution chain. (Doc. # 10 at 13).

Defendants state affirmatively in their Response that they "have returned to Plaintiff the McHutchison materials that they retained, are willing to destroy any copies, and have represented that they will not use any of the materials in the future, and do not need the materials in order to do their jobs." (Doc. # 30 at 2). Assuming Defendants are not misrepresenting their compliance with Plaintiff's request for a return of the Property, Plaintiff would be unable to satisfy the element that "the plaintiff demanded return of the property and the defendant refused." *Ford*, 532 S.W.3d at 641 n.2. Because of these shortcomings, at this stage in the proceedings, Plaintiff has not proven a strong likelihood of success on the merits as to its conversion claim.

### 7. Civil Conspiracy

Seventh, Plaintiff argues that all Defendants engaged in a civil conspiracy to commit the unlawful and tortious acts alleged within the Complaint. (Doc. # 1 ¶¶ 158-162). A civil conspiracy is "a corrupt or unlawful combination or agreement between two or more persons to do by a concert of action an unlawful act, or to do a lawful act by unlawful means." *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936). To prevail on this claim, "the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008). In other words, "there must be proof that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act." *Id.* However, a civil conspiracy claim cannot be asserted alone, "it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, LLC v. Buckram Oak Holdings,*

*N.V.*, Nos. 2008-CA-2389 and 2009-CA-26, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010).

McHutchison argues that all Defendants acted in concert in committing defamation, tortious interference with contracts and business relationships, conversion, and misappropriation of trade secrets. (Doc. # 10 at 17). Specifically, McHutchison alleges Defendant Perkins acted with Defendants Blocker and Campbell to run rebooking reports either immediately before or immediately after their resignation, and that Defendant sales representatives acted in a common scheme or plan by emailing McHutchison property to their personal email accounts on or about the days they resigned. (Doc. # 1 ¶¶ 160-161). If Plaintiff can substantiate that there was in fact a common design or plan implemented by the Defendants in undertaking these allegedly unlawful acts, Plaintiff may be able to succeed on this theory of recovery. However, as this is not a stand-alone claim, and instead relates to the recovery of damages from multiple Defendants, this does not assist Plaintiff in its argument that a preliminary injunction is necessary.

### 8. *Defamation*

Eighth, Plaintiff argues that Pezzillo and the Defendant sales representatives defamed Plaintiff to customers, vendors, transportation partners, and others. (Doc. # 1 ¶¶163-168). To succeed on a defamation claim, a plaintiff must meet the following elements: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm by the publication." *Estepp v. Johnson Cnty. Newspapers, Inc.*,

578 S.W.3d 740, 744 (Ky. Ct. App. 2019) (quoting *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014)). Truth is an absolute defense to defamation. *Toler*, 458 S.W.3d at 283 n.19. Proof of special damages is unnecessary if Plaintiff establishes defamation per se because "injury to reputation is presumed and the words are actionable on their face." *Toler*, 458 S.W.3d at 282. Defamation per se includes statements that are incompatible with a person or company's profession, trade, or business. *Tucker v. Kilgore*, 388 S.W.2d 112, 114 (Ky. 1964). A statement of opinion is "actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989) (quoting Restatement (Second) of Torts § 566 (1977)).

Plaintiff alleges that Defendant Pezzillo and Defendant sales representatives published defamatory statements about Plaintiff's business that harmed its reputation. (Doc. # 1 ¶ 165). These statements include: "customer service at McHutchison went to hell," "McHutchison is run by the 'Dutch Mafia,'" McHutchison did not value its departed employees, McHutchison failed to pay Defendant sales representatives amounts owed, and "McHutchison might not be around for long." (*Id.* ¶ 89). A number of these statements, namely that "customer service at McHutchison went to hell" and McHutchison failed to value its employees, are likely not actionable as they may be considered statements of opinion. *See Yancey*, 786 S.W.2d at 857. The statements regarding McHutchison being run by the "Dutch Mafia" and McHutchison not being around for long could be considered defamatory if they "created a reasonable inference that they were justified by undisclosed defamatory facts." *Id.*

The statement with the strongest defamatory connotation is that McHutchison failed to pay Defendant sales representatives. Plaintiff has provided an email from Defendant Montgomery which states "Mchutchison [sic] is being a real pain- They are not allowing me to ship my own orders since I booked them under Mchutchison [sic] nor are they paying me for anything shipped in 2021, sucks!" (Doc. # 45-1 at 23). This statement would be incompatible with McHutchison's business and could be classified as defamatory per se. But, as noted above, truth is an absolute defense to defamation. At this stage in the litigation, McHutchison cites its Complaint, and the email, to support the allegedly defamatory statements. (*See* Doc. # 10 at 18). Defendants deny that they have made any defamatory statements about McHutchison. (Doc. # 30 at 18). While McHutchison may be successful on at least one of the allegedly defamatory statements, it has failed to show a strong likelihood of success on the merits because it has not provided evidence showing that Defendant Montgomery's statement was in fact false.

### 9.    *Fraud*

Ninth, Plaintiff alleges a count of fraud against Pezzillo. (Doc. # 1 ¶¶ 169-175). In an action for fraud, a plaintiff must prove by clear and convincing evidence: "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *Joiner v. Tran & P Props., LLC*, 526 S.W.3d 94, 103 (Ky. Ct. App. 2017) (quoting *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999)).

McHutchison claims, citing only its Complaint, that Pezzillo induced McHutchison employees to leave their jobs by telling them that their jobs were in jeopardy because McHutchison may be sold. (Doc. # 10 at 19). To the contrary, in Pezzillo's declaration

he states that to the best of his knowledge he did not tell employees to leave McHutchison or solicit them to come work with him at EHR. (Doc. # 30-9 ¶¶ 9, 11). Instead, Pezzillo explains that there were rumors that McHutchison's parent company, Dummen Orange, was for sale and that in 2020 the majority of its New Jersey office was laid off. (*Id.* ¶ 10). At this stage in the litigation, there seems to be a dispute of fact as to what, if anything, Pezzillo said to the Defendant sales representatives. Because of this, McHutchison has not met its burden to prove a strong likelihood of success on the merits of its fraud claim against Pezzillo.

### 10.    *Unjust Enrichment*

Tenth, Plaintiff alleges a count for unjust enrichment against all Defendants. (Doc. # 1 ¶¶ 176-180). To succeed on a claim of unjust enrichment, a plaintiff must prove that there was: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of [that] benefit without payment for its value." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778-79 (Ky. 2017) (alteration in original).

Specifically, McHutchison alleges that it conferred the benefit of salary on the Defendant sales representatives for a time period where they failed to perform their job duties. (Doc. # 10 at 20-21). Further, McHutchison argues that the Defendant sales representatives are utilizing the benefit of McHutchison's property, and it is inequitable for them to retain this benefit instead of returning it. (*Id.* at 21). Again, there is a dispute of fact as to whether Defendants retained the "benefit" of McHutchison property as Defendants expressly claim otherwise in their filings with the Court. (Doc. # 30 at 9). However, Plaintiff has not presented sufficient evidence rebutting Defendants' claims or

showing that Defendants are still utilizing the property. Because of this, Plaintiff has not demonstrated a strong likelihood of success on the merits.

### 11. *Promissory Estoppel*

Lastly, Plaintiff alleges a promissory estoppel count against all Defendants. (Doc. # 1 ¶¶ 181-185). A promissory estoppel claim can be established by showing: (1) "a promise[,]" (2) "which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person[,]" (3) "which does induce such action or forbearance[,]" and (4) "injustice can be avoided only by enforcement of the promise." *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009).

Plaintiff argues that the departed employee Defendants "promised to maintain the confidentiality of McHutchison Property," McHutchison relied upon that promise in allowing the employees to access the property, and in order to avoid further injustice, the Court should enforce the "Departed Employees' promises to maintain the confidentiality of, and stop misappropriating and using McHutchison Property." (Doc. # 10 at 21). Multiple customers, the past President of McHutchison, and a number of the Defendant sales representatives in this action have explained that they did not think McHutchison reports or customer lists were confidential or proprietary. (*See, e.g*, Docs. # 30-1, 30-2, 30-3, 30-4, 30-5, 30-6, 30-8, and 30-9). To rebut this evidence, Plaintiff has provided a declaration from the current President of McHutchison, Nathan Lamkey, stating that this information was in fact confidential. (Doc. # 39 ¶ 41). Additionally, Plaintiff provides an employee handbook which states that business information obtained through employment are confidential and proprietary. (Doc. # 38-2 at 73). However, Defendants contend that this is not the handbook that governed 2021 and the sales representatives

had their own handbook that does not mention confidentiality, and instead only refers to trade secrets and sales plans. (Doc. # 38-2 at 116). This dispute raises a factual issue, and at this stage in the litigation, the Court does not have adequate information to affirmatively decide that the departed employees knew this information was confidential.

Ultimately, if Defendants were unaware that the information was confidential, it would logically follow that Defendants never made a promise to not disclose this information. Because of this, and based on the Court's review of the evidence presented up to this point, Plaintiff has not demonstrated a strong likelihood of success on this claim.

### C.    Irreparable Injury

The moving party must show that in the absence of injunctive relief, it would suffer irreparable injury. To be considered irreparable, the injury resulting from the denial of injunctive relief cannot be "fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Plaintiff McHutchison alleges that "[e]very day that goes by with Defendants using McHutchison's long-and well-developed, proprietary business assets causes more inestimable injury to McHutchison's goodwill and business reputation and loss to it [sic] competitive advantage." (Doc. # 10 at 23).

In their Response, Defendants have clearly stated that they are not using materials they developed while working at McHutchison and are refraining from making defamatory statements about Plaintiff. (Doc. # 30 at 9). While "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute," a loss of customer goodwill is typically found in conjunction with a breach of a covenant not to compete. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir.

1992) (holding that irreparable injury was satisfied when Defendants breached their covenants not to compete); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) ("The likely interference with customer relationships resulting from the breach of a non-compete agreement is the kind of injury for which monetary damages are difficult to calculate"). As explained in *Church Mut. Ins. Co. v. Smith*, "the covenant not to compete is one of the only forms of protection for a highly competitive industry to protect its client based. Otherwise, there is nothing to prevent employees from resigning and then attempting to pirate away the employer's clients after that employer has spent considerable time, effort, and money to train employees." No. 3:14-cv-749, 2014 WL 12866056, at *6 (W.D. Ky. Nov. 24, 2014) (internal citations omitted).

Here, Defendants were not bound by any non-compete agreement with Plaintiff. Instead, they were at-will employees, free to leave McHutchison at any time. While Plaintiff alleges that the loss of customer good will flows from allegedly unlawful acts by Defendants, Plaintiff has failed to show a strong likelihood of success on the merits for its eleven claims. A temporary injunction is an "extraordinary and drastic remedy . . . that should only be awarded upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distrib. of Ohio v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017). Due to the drastic nature of a preliminary injunction, it is not appropriate to issue one here because it is not clear that Plaintiff is entitled to this relief. Although Plaintiff has contended that it is unsure how many customer contracts it has lost due to the exit of the departed employees, the Court is confident that this is discoverable with further research. Similarly, any damages that may extend from Defendants' past actions can be adequately

compensated monetarily.

Further, preliminary injunctions are "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (internal quotations and alterations omitted) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)). Here, it is clear to this Court that Plaintiff's request which would prevent Defendants from "contacting and/or soliciting, in any manner, and/or taking orders" from McHutchison customers who were not EHR customers prior to March 12, 2021, is far too broad in its scope and application. (Doc. # 10 at 1). The circumstances surrounding this case do not demand such a broad remedy, especially when the injuries Plaintiff is complaining of can likely be redressed through money damages.

### D. Substantial Harm to Others & Public Interest

Next, the Court must consider whether granting a preliminary injunction will result in substantial harm to others and whether an injunction would serve the public interest. "Others" can include third parties or defendants. *Tempur-Pedic N.A., LLC v. SOS Furniture Co., Inc.*, No. 5:20-cv-54, 2020 WL 9216451, at *5 (E.D. Ky. Apr. 7, 2020). The Court finds that harm may occur to others if the preliminary injunction is granted. For example, customers in the nursery business would be unable to place orders with EHR, which may now employ their preferred sales representative. While this may not rise to the level of substantial harm, because Plaintiff was unable to show likelihood of success on the merits or irreparable injury, even if this factor were to support Plaintiff's request, a preliminary injunction would still not be warranted. *See D.T.*, 942 F.3d at 326-27. Further,

Defendants have alleged that many of the departed employees would be unable to earn a living if the injunction was granted, and the sales representatives would be unable to accept any new orders from *any customer who was previously a customer of McHutchison*. (Doc. # 30 at 18) (emphasis added). The scope of the preliminary injunction would likewise not serve the public interest because it would prevent customers from choosing which nursery supplier to place their orders with.

### E. Weighing of Factors

As explained in the discussion above, each of the factors weighs against this Court granting a preliminary injunction. The Court found that Plaintiff did not demonstrate a strong likelihood of success on the merits as to the counts in the Complaint, that irreparable harm would not occur in the absence of an injunction, Defendants and customers may suffer harm if the injunction was granted, and the public interest counsels against granting the injunction.

## III. CONCLUSION

Thus, for the reasons articulated herein,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. # 10) is **DENIED**.

This 22nd day of June, 2021.



**Signed By:**

*David L. Bunning*

**United States District Judge**

J:\DATA\ORDERS\Cov2021\21-65 MOO on Preliminary Injunction.docx